

**Jeffrey R. Maguire**, Esq., Partner    o: (212) 939-7229    f: (212) 531-6129
a: 445 Hamilton Avenue, Suite 1500, White Plains, NY 10601
e: jmaguire@stevensonmarino.com

January 2, 2025

*Via ECF*
The Honorable Anne Y. Shields
United States Magistrate Judge for the
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:    *Cajilema v. Barrett Roofs, Inc. et al.,*
             Docket No: 23-cv-0080 (GRB)(AYS)

Dear Judge Shields:

    We represent Plaintiff Jose Manuel Cajilema in the above-referenced matter alleging wage and hour claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Defendants Barrett Roofs, Inc. ("Barrett") and Thomas Delancey (collectively as "Defendants"). We write to respectfully request an emergency conference to address Defendants' second attempt to usurp this Court's jurisdiction over this matter – which includes Defendants' intentional failure to disclose an investigation by the New York State Department of Labor ("NYDOL"), and to immediately enjoin Defendants from entering into a stipulated settlement with the NYDOL pending the outcome of a hearing on this matter.

    Time of the essence, as Plaintiff's counsel has been informed by the NYDOL that Defendants may enter into a stipulation with the NYDOL as soon as tomorrow, January 3, 2025. Plaintiff additionally requests sanctions against Defendants for Defendants' misrepresentations and violations under Federal Rules of Civil Procedure, Rules 26 and 37, and against Defendants' counsel – should the Court conclude Defendants were complicit in the fraud committed upon the Court.

### I.    <u>Procedural History</u>

    As the Court may recall, the Court sanctioned Defendants for attempting to dispose of this action by attempting to enter into a "settlement agreement" with Plaintiff (outside Plaintiff's counsel's knowledge) on July 24, 2024. *See* Electronic Order (7/24/2024). The purported settlement agreement was entered into after a class-wide mediation held on April 18, 2024, but right before a second mediation that was scheduled for June 6, 2024. Under the guise of purported

1

good-faith settlement discussions, Plaintiff held off on making his motion for conditional certification in July 2023. *See* Dkt. No. 39, p. 13, ¶ 1. Based on the foregoing, the Court granted equitable tolling in its Order. *See* Dkt. No. 39, p. 13, ¶ 1.

During the July 24, 2024 conference with the Court, the Court held the agreement to be void and unenforceable and sanctioned Defendants $5,000.00 for their conduct, additionally requesting that the parties provide a status report no later than July 31, 2024. *See Id*. On July 31, 2024, the parties apprised the Court that they were discussing a stipulation to conditional certification of a collective action or required a briefing schedule. *See* Dkt. No. 33. On August 7, 2024, the parties filed a proposed briefing schedule for Plaintiff's anticipated motion, which the Court adopted on August 8, 2024. *See* Electronic Order (8/8/2024). The motion was fully briefed on October 14, 2024. *See* Dkt. Nos. 36-38.

In an apparent attempt to delay the proceedings, Defendants opposed conditional certification, supported by two declarations – sworn under the penalty of perjury – from Barrett's former owner and current Chief Operating Officer, that both "state that it was Barrett Roofs' practice to pay employees, including Plaintiff, for all hours worked." *See* Dkt. No. 39 (citing Delancey Decl., ¶ 5; Pavlou Decl., ¶ 4). Further, "[b]oth Delancey and Pavlou further state that they were not aware of Plaintiff working hours for which he was not compensated; nor did he ever report that he worked uncompensated hours." *Id*. (citing Delancey Decl., ¶ 7; Pavlou Decl., ¶ 6). Additionally, "[b]oth declarations also state that neither Delancey nor Pavlou are aware of any other employees of Barrett Roofs complaining to the company about their compensation." *Id*. (citing Delancey Decl., ¶ 8; Pavlou Decl., ¶ 7).

On September 10, 2024, Plaintiff served requests for production of documents pursuant to Fed.R.Civ.P. 34 on both Barrett and Delancey. On November 12, 2024, following Plaintiff's consent to extend Defendants' deadline to provide responses, Defendants provided a joint response to Plaintiff's requests for production of documents on behalf of all Defendants.[1] In Plaintiff's Request No. 35, Plaintiff requested as follows:

> **REQUEST NO. 35:** Produce documents consisting, containing or evidencing investigations, rulings, decisions or opinions rendered by any federal or state court or administrative agency, relating to the issue of whether Plaintiff was paid in compliance with federal and state laws. This request includes, but is not limited to, opinion letters (including opinions and advice from legal counsel) sought by Defendants concerning the compensation to Plaintiff for the Relevant Period.

In response to Plaintiff's Request No. 35, Defendants jointly responded as follows:

---

[1] Defendants claim that they initially attempted to serve responses on October 31, 2024, but due to what the parties believe to be a server issue, Plaintiff did not receive until November 12, 2024.

> **OBJECTION:** Objection. Defendants object to the extent this request seeks information protected from disclosure by the attorney-client or other privilege, the work product doctrine and/or the protection afforded mental impressions, conclusions, opinions or legal theories of one or more attorneys and/or representatives of Defendants.
>
> **RESPONSE:** Subject to and without waiving the foregoing general and specific objections, **Defendants are not aware of any responsive documents**. Defendants reserve the right to amend, modify, clarify and/or supplement its responses and objections as appropriate.

*See* **Exhibit 1**, Defendants' Responses to Plaintiff's First Request for Production of Documents (emphasis added).

On December 17, 2024, the Court granted Plaintiff's motion for conditional certification, certifying a collective action for all manual laborers that worked for Defendants in New York from January 5, 2020, through the present. *See* Dkt. No. 39. The Court required Defendants to produce all information concerning the putative members of the collective no later than December 31, 2024. *See id*. On December 18, 2024, Defendants' counsel advised that because the deadline was December 31, 2024, a holiday, Defendants would have difficulty producing by that date. I advised Defendants' counsel that we expected Defendants to comply with the Court's Order.[2]

On December 27, 2024, at 2:44 P.M., I received an email from Defendant Delancey's counsel, William Kennedy from Montgomery McCracken Walker & Rhoads LLP, stating as follows:

> I believe you are aware of the NY DOL's audit of Barrett Roofs. I recently learned of it and that it is being resolved. The resolution may include a payment to your client, Mr. Cajilema.
>
> I have not been involved in the audit or resolution of it. I understand that the audit focused on public sector jobs in NY state in 2018 and 2019 and that Barrett is currently waiting for a stipulation from the NYDOL to resolve the matter. I will let you know as I receive more information, but let us know if you have time for a call on Monday or Tuesday to discuss this matter.

*See* **Exhibit 2**, Email dated December 27, 2024. I responded that same afternoon, stating that I was not aware of any audit as Defendants stated in their responses that they did not possess any documents responsive to Plaintiff's request for such information, pointing to Defendants' Response to Plaintiff's Request No. 35. *See* **Exhibit 3**. In response, Defendant Barrett's counsel

---

[2] Defendants' counsel stated today that they expect the information to be provided by January 3, 2025.

3

stated that they only discovered the issue on that day and immediately brought it to my attention. Defendants also, upon two requests from Plaintiff's counsel, provided the name of the NYDOL investigator and her contact information.

On December 28, 2024, I called and emailed the NYDOL investigator, Samar Mazahreh, to notify her of this case.[3] On January 2, 2025, I spoke with Ms. Mazahreh, who informed me that the NYDOL had been investigating Defendants based on a complaint filed in 2019, and were in the process of wrapping up a stipulated settlement with Defendants. According to Ms. Mazahreh, the NYDOL investigation included prevailing wage claims, overtime claims, and other benefits claims, spanning a period from 2019 to 2022 (i.e., the same claims/damages brought in this action). She further represented that Defendants agreed to pay $2,000,000 in a stipulated settlement that Defendants stated they would imminently sign.

Additionally, Ms. Mazahreh stated that Plaintiff, Jose Manuel Cajilema, was part of the settlement[4] and that the NYDOL was never informed of his pending collective/class action. Ms. Mazahreh stated that she was not sure if she could disclose any further information and would speak to her supervisor. In addition, Ms. Mazahreh oddly refused to disclose what attorneys she was dealing with on behalf of Defendants.

II. **Defendants' Actions to Purposefully Delay Litigation of this Matter, Make Material Misrepresentations to the Court Concerning their Wage Practices, and Willfully Fail to Disclose Discovery are Sanctionable and Serve to Detriment the Putative Class/Collective**

According to the NYDOL investigator, there has been an ongoing investigation into Barrett's wage practices for approximately **5 years**. This action, involving substantially the same wage claims, has been pending for **2 years**. This action has taken two years substantially based on Defendants' intentional, tactical delays in litigating this matter. It is therefore simply incomprehensible that Defendants' counsel only learned of this sprawling NYDOL investigation last Friday, December 27, 2024. During the July 24, 2024 Court conference before Your Honor, Defendants' counsel similarly represented that it had absolutely no knowledge that their clients were attempting to settle the action with Plaintiff while the parties were engaged in class settlement negotiations. Now, Defendants' counsel is again representing that they had absolutely no knowledge that their clients were being investigated by the NYDOL for the entire two-year pendency of this action, and were now supposedly attempting to settle with the NYDOL without

---

[3] We note that we have found it is the NYDOL's typical practice to yield any investigation/audit where the factual matter underlying the NYDOL's involvement is encompassed by a class/collective-wide lawsuit.

[4] This means that Defendants were negotiating a resolution of Plaintiff's claim without apprising Plaintiff's counsel.

4

assistance of counsel. Once again, it is impossible to believe that Defendants would elect to conceal an ongoing, substantial, NYDOL audit/settlement from their attorneys representing them in a wage and hour class action.[5] Moreover, the fact that the settlement included Plaintiff himself is deeply concerning, as Defendants and their counsel were well aware that he was represented by counsel in this pending action.

Considering the detailed procedural history of this case explained *supra*, the timing seems unmistakably calculated. First, Defendants agreed to a mediation on a class-wide basis and attended one mediation that allowed Defendants to evaluate Plaintiff's damage calculations. Based on Plaintiff's damage calculations for the class, which included only overtime damage calculations and **not** prevailing wage damages, Defendants learned the enormous exposure they faced in comparison to the NYDOL audit. Plaintiff's overtime damage calculations on behalf of the class were calculated to be $12,199,393.61, a figure that far exceeds Defendants' anticipated stipulated settlement with the NYDOL. Because Plaintiff's calculations did not include prevailing wage rates, the overtime damages will actually be significantly higher.

After learning of their exposure through mediation, Defendants then attempted to circumvent this Court's jurisdiction by picking off the Plaintiff. Should the Court have enforced that settlement, which Defendants' counsel vociferously argued for at the July 24th hearing to be fair and reasonable, Plaintiff's counsel would not have learned of the NYDOL investigation and liability would have been minimized as Defendants more than likely would have continued to delay and/or defend against the NYDOL investigation.

Defendants then committed two extremely troubling actions to further prevent Plaintiff's counsel from learning of the investigation. First, they intentionally made misrepresentations in their discovery responses, intentionally concealing the NYDOL audit/investigation. Second, Defendants submitted declarations to this Court in opposition to Plaintiff's motion declaring under penalty of perjury that: (1) Defendants were not aware of Plaintiff working uncompensated hours and; (2) no other Barrett employee complained to Barrett about his compensation. The Court noted that Defendants' declarations were unavailing at this stage and "serve only to create a question of fact." *See* Dkt. No. 39, p. 11, ¶ 2. In light of the NYDOL investigation that was apparently in its final stages at the time these declarations were submitted, these sworn statements to the Court are now revealed to be demonstrably false. Not only were Defendants aware of complaints made by other employees of uncompensated hours, but they were in the process of settling these claims for $2,000,000 based on the NYDOL audit. This constitutes perjury by both Delancey and Barrett's COO, which is sanctionable as a fraud upon the Court. *See Ceglia v. Zuckerberg*, 2013 WL 1208558, at *8 (W.D.N.Y. Mar. 26, 2013) (collecting cases imposing sanctions where parties

---

[5] We note that Defendants' response to document request number 35 reflects either: (1) Defendants' counsel's failure to inquire with its client concerning such discovery demand; or (2) Defendants' counsel's willful failure to provide truthful and accurate information.

submitted "fabricated evidence.") If Defendants' counsel was aware of these mistruths, then Defendants' counsel breached their ethical obligation to the Court.

Moreover, Defendants attempted to limit the scope of the collective action to manual laborers "who specifically worked on Plaintiff's 'crew,' at the same job site locations, with the same supervisor(s) as Plaintiff . . . limited to November 2022 through December 2, 2022." While Defendants' argument is now illuminated to be disingenuous and yet another dilatory tactic, it additionally seems contrived to limit the scope to a time period following the date that the NYDOL investigator represented as the end point of the agency's investigation.

It was only after the Court issued its order granting conditional certification and rejecting Defendants' arguments to limit the scope that Defendants attempt to "correct" their supposed discovery omission and notify Plaintiff's counsel of the NYDOL investigation. Of course, considering the Court has now certified a collective action for all manual laborers that worked for Defendants in New York from January 5, 2020 to the present, Defendants decision to notify Plaintiff's counsel that a stipulated settlement with the NYDOL for substantially less money is imminent deserves scrutiny from this Court. Indeed, based on the foregoing, following this Court's certification of a collective action, Defendants took a drastic step (again allegedly without their attorneys' knowledge) to settle a long-standing NYDOL investigation, attempting to evade the Court's jurisdiction over them and usurp its authority in the present case.

The doctrine of preemption is a function of the Supremacy Clause of the United States Constitution. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).[3] State laws are preempted "where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (citations omitted). "A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Id*. Permitting Defendants to commit discovery violations and submit false statements to the Court in order to facilitate its non-disclosed settlement with the NYDOL interferes with this Court's directive in overseeing a certified collective action under the federal laws. To be clear, Defendants' purported stipulation with the NYDOL, if permitted to go through, would necessarily settle and/or limit claims that have been brought before this Court.

Based on the foregoing, Plaintiff respectfully requests that the Court:

1) immediately enjoin Defendants from abridging the rights of the putative class/collective members by ordering Defendants to not enter into a stipulation with the NYDOL, until and unless the Court expressly permits such action following a Court hearing on this matter;
2) hold an emergency conference with all parties present to address these issues prior to Defendants entering into a stipulated settlement with the NYDOL;

3) sanction Defendants for their recidivist bad faith conduct in this case, including its misrepresentations and its intentional refusal to disclose the existence of the NYDOL and Defendants' second attempt to settle the claims pending before this Court without Plaintiff's counsel's or the Court's knowledge; and
4) require Defendants to produce all documents concerning the NYDOL investigation/audit, including settlement communications that sought to abridge the rights of Plaintiff and the putative class and collective members.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

_____
Jeffrey R. Maguire, Esq.
Stevenson Marino LLP

To: Defendants' Counsel *via* ECF
Ms. Samar Mazahreh, New York Department of Labor *via* Email (samar.mazahreh@labor.ny.gov)